IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EDDIE W. HOLCOMB, SR., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | CIVIL ACTION NO. |
| NORFOLK SOUTHERN : | 1:09-CV-0891-RWS |
| RAILWAY COMPANY, f/k/a : | |
| NORFOLK AND WESTERN : | |
| RAILWAY COMPANY, and : | |
| NORFOLK SOUTHERN : | |
| CORPORATION, : | |
| : | |
| Defendants. : | |

## **ORDER**

This case comes before the Court on Defendants' Motion for Summary Judgment [38], Plaintiff's Motion for Summary Judgment as to Defendants' Counterclaim [37], and Defendants' Motion for Leave to File Motion for Summary Judgment on the Counterclaim [44]. After considering the record, the Court enters the following order.

## **Background**

On two occasions in the mid-1980's, Plaintiff suffered injuries while working for Defendants as a locomotive engineer. On March 30, 1987, Plaintiff

AO 72A
(Rev.8/82)

signed a release (the "Release") in which he released Defendants "from all claims which I have or may hereafter have, for personal injuries, known or unknown and/or loss of any kind resulting or in any way arising from an accident(s) which occurred" in June 1984 and June 1986 in consideration of a settlement payment of $218,131.48.  (Complaint, Ex. A, Dkt. [1-1] at 7 of 11). On that same day Plaintiff signed another document (the "Letter"), which Plaintiff refers to as the "To Whom It May Concern Letter" and Defendants refer to as the "Employment Waiver," which states in its entirety:

> TO WHOM IT MAY CONCERN:
> I am totally and permanently disabled and agree that I will not seek to re-enter the service of Norfolk Southern Corporation, and, to the same extent as if expressly named, its subsidiaries, parents, affiliated companies and its leased and operated lines, and all of their respective successors and assigns, effective the above date, and that none of such companies are under any obligation to take or retain me in employment in any capacity.

(Complaint, Ex. B, Dkt. [1-1] at 8 of 11).

In 2005, Plaintiff underwent a back fusion operation, and as a result, felt he was healthy enough to return to work.  He contacted Defendants who ordered him to undergo a functional capacity evaluation ("FCE") prior to returning to work.  Despite passing the FCE, Plaintiff was not allowed to return to work because Defendants claimed his signing of the Letter in 1987 was a

2

binding agreement not to return to work.  As a result, Plaintiff filed a Complaint for Declaratory Judgment [1-1] seeking a declaration:

> (a) That [the "Letter"] lacks consideration and is not an enforceable agreement; or
> (b)That ["the Letter"] is no longer applicable and does not prevent Plaintiff from returning to work now that he is not disabled;
> (c) That Plaintiff be allowed to exercise his seniority and take such steps [as] are appropriate to begin the process that will allow him to return to work for the Defendant;
> . . .

(Dkt. [1-1] at 6 of 11).  Defendants have a filed a Counterclaim [14-1] seeking, *inter alia*, a judgment that Plaintiff breached the "Agreement," defined as the Release and the Letter.

## Discussion

Both of the pending Motions for Summary Judgment [37, 38], and the Motion [44] for which Defendants seek leave to file, require that the Court resolve the same question: a determination of whether the Letter is an enforceable agreement.  The Court examines that question below.

**I.    Standard for Summary Judgment**

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

3

AO 72A
(Rev.8/82)

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The applicable substantive law identifies which facts are material. Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## II.   Preemption under the Railway Labor Act

Defendants argue that the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, preempts Plaintiff's declaratory judgment action. Whether federal law preempts a state law establishing a cause of action is a question of congressional intent. Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252, 114

5

S. Ct. 2239, 129 L. Ed. 2d (1994) (citing Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 208, 105 S. Ct. 1904, 1909, 85 L. Ed. 2d 206 (1985)).

> Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes. To realize this goal, the RLA establishes a mandatory arbitral mechanism for the prompt and orderly settlement of two classes of disputes. The first class, those concerning rates of pay, rules or working conditions, are deemed "major" disputes. Major disputes relate to the formation of collective bargaining agreements or efforts to secure them. The second class of disputes, known as "minor" disputes, grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions. Minor disputes involve controversies over the meaning of an existing collective bargaining agreement [("CBA")] in a particular fact situation. Thus, major disputes seek to create contractual rights, minor disputes to enforce them.

Hawaiian Airlines, 512 U.S. at 252-53 (internal citation and punctuation omitted).

Defendants argue that Plaintiff's cause of action constitutes a minor dispute as defined by the RLA, and therefore his declaratory judgment action is preempted by the RLA. (Dkt. [38-2] at 11). If the Court were to determine that this action represented a minor dispute as defined by the RLA, it would be preempted. Id. at 253. However, the Court does not find that the underlying basis of this action is an RLA minor dispute, but rather a declaratory judgment action to determine the enforceability of a purported contract.

6

AO 72A
(Rev.8/82)

As Defendants note in their motion, minor disputes "involve controversies over the meaning of a collective bargaining agreement in a particular fact situation." (Dkt. [38-2] at 11-12 (citing Hawaiian Airlines, 512 U.S. at 253)). Minor disputes "are those that are grounded in the CBA" and "involv[e] the interpretation or application of existing labor agreements." Hawaiian Airlines, 512 U.S. at 256. Plaintiffs' end-goal is to get a job with Defendants and retain his seniority. However, that is not the subject matter of this action. The Court recognizes that part of the declaration Plaintiff seeks is that he "be allowed to exercise his seniority" and take other necessary steps to return to work. (Dkt. [1-1] at 6 of 11). However, that is secondary to a determination of whether the Letter is an enforceable contract and whether Plaintiff is precluded from attempting to exercise his rights under the CBA.

The Court will not make any determination as to Plaintiff's seniority, as that question is precluded by the RLA. However, the Court is not precluded from determining whether the Letter is an enforceable agreement and whether it currently prevents Plaintiff from returning to work. Determining whether the Letter represents a currently enforceable contract is not a question "grounded in the CBA" and can be answered without the "interpretation or application of existing labor agreements." Hawaiian Airlines, 512 U.S. at 256.

7

The Court also rejects Defendants' argument that Plaintiff's claim is an "improper splitting of his return-to-work claim under the CBA," and that entertaining it will "enable [Plaintiff's] attempted end-around of the Public Law Board's [("PLB")] jurisdiction." (Dkt. [53] at 8). Even if this Court finds that the Letter is not an enforceable agreement or does not prevent Plaintiff's return to work, Plaintiff will still be required to submit his claim to the PLB in order to determine whether there is any other impediment to his return, and if able to return, at what level of seniority he would return.

### III.   Enforceability of the Letter

Plaintiff seeks a declaration from the Court that the Letter either lacks consideration and is not an enforceable agreement, or the Letter is no longer applicable and does not prevent Plaintiff from returning to work. (Dkt. [1-1] at 6 of 11). In order for the letter "[t]o constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1.[1] The parties contest two of these

---

[1] Plaintiff in its Response to Defendants' Motion for Summary Judgment [46] seeks to argue for the first time that federal law, as opposed to Georgia law, controls the validity of the Letter, because it was signed in conjunction with Plaintiff's release of claims under the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.* ("FELA"). Plaintiff's Complaint was originally filed in a Georgia superior court and

8

requirements: whether there was proper consideration and whether the parties agreed upon the terms of the contract.[2]

### A. Consideration

As noted above, the entirety of the Letter consists of a one paragraph statement which states that Plaintiff will not seek employment with Defendant or entities associated with it. Plaintiff argues that the Letter "contains no recital of consideration whatsoever." (Dkt. [37-1] at 7). Plaintiff notes that the current version of the Letter used by Defendant states that the agreement not to work for the railway is "in consideration of the payment which has been made to me," and the absence of such a phrase from the Letter evinces a lack of consideration. (Id. (citing Ex. D, Dkt. [37-3]). Defendants contend that this argument fails because under Georgia law, courts do not "examine an agreement in a vacuum" where there is evidence that it was executed at the

---

makes no mention of federal law. In responding to Defendants' Notice of Removal, Plaintiff stated that "there is no federal question whatsoever and . . . Defendant's attempt to conjure one up, is without merit." (Dkt. [3] at x). In Plaintiff's Motion for Summary Judgment on Defendants' Counterclaim, which turns on the same underlying question as Defendants' Motion for Summary Judgment, Plaintiff relies solely on Georgia law for the unenforceability of the contract. Considering the history of this action to this point, Plaintiff is estopped from now arguing that the Letter should be construed in accordance with federal common law.

[2] Plaintiff states that the Letter "is unenforceable because there is no consideration and there was no meeting of the minds." (Dkt. [37-1] at 6).

9

same time as other documents that describe the parties' rights and obligations. (Dkt. [38-2] at 18 (citing Owenby v. Holley, 256 Ga. App. 13, 16, 567 S.E.2d 351, 354 (2002)). The Georgia Code states that "[a]ll contemporaneous writings shall be admissible to explain each other." O.C.G.A. 24-6-3(a). The contemporaneous writing upon which Defendants rely to provide consideration for the Letter is the Release.

The Release states that Plaintiff agrees to release Defendants "from all claims which I have or may hereafter have, for personal injuries, known or unknown and/or loss of any kind resulting or in any way arising from an accident(s) which occurred" in June 1984 and June 1986 in consideration of a settlement payment of $218,131.48. (Ex. A, Dkt. [1-1] at 7 of 11). Plaintiff argues that the Release makes no mention of Plaintiff resigning from the railroad, or the CBA, and is a release of claims arising from injuries that occurred in 1984 and 1986, not a release of seniority rights. While Plaintiff is correct about the contents of the Release, the argument does not preclude the payment in the release from serving as consideration for the Letter. The two documents were "executed on the same date, at the same time, and at the same location," and therefore should be considered and construed together. C.L.D.F. Inc. v. Aramore LLC, 290 Ga. App. 271, 273, 659 S.E.2d 695, 696 (2008) ("As

10

a matter of contract law, we must consider the Lease and the Guaranty together, as contemporaneous writings, in an effort to derive their intended meaning."). "[C]ontemporaneous written agreements are perhaps one of the surest ways to establish the intent of the parties in entering into each of those agreements." Id. (quoting Duke v. KHD Deutz of Am. Corp., 221 Ga. App. 452, 453, 471 S.E.2d 537 (1996)). Finally, it is clear from Plaintiff's deposition that he understood he would not receive his settlement check unless he also signed the Letter. (Dkt. [38-2] at 19 (citing excerpts of deposition)). Therefore, the Court finds that proper consideration existed for the Letter.

> B.   Construing the Agreement

Regardless of whether consideration was present, the Letter must also constitute a meeting of the minds between the parties in order to serve as an enforceable agreement. Construction of a contract under Georgia Law involves three steps and is initially a matter of law for the court.

> [(1)] First, the trial court must decide whether the language is clear
> and unambiguous. If it is, the court simply enforces the contract
> according to its clear terms; the contract alone is looked to for its
> meaning. [(2)] Next, if the contract is ambiguous in some respect,
> the court must apply the rules of contract construction to resolve
> the ambiguity. [(3)] Finally, if the ambiguity remains after
> applying the rules of construction, the issue of what the ambiguous
> language means and what the parties intended must be resolved by
> a jury.

11

Blue Cross & Blue Shield of Ga., Inc. v. Shirley, 2010 WL 2775175, *3 (Ga. Ct. App. 2010).

> The Letter in its entirety states:
>
> TO WHOM IT MAY CONCERN:
> I am totally and permanently disabled and agree that I will not seek to re-enter the service of Norfolk Southern Corporation, and, to the same extent as if expressly named, its subsidiaries, parents, affiliated companies and its leased and operated lines, and all of their respective successors and assigns, effective the above date, and that none of such companies are under any obligation to take or retain me in employment in any capacity.

(Complaint, Ex. B, Dkt. [1-1] at 8 of 11). The Court finds that the language of the contract is clear and unambiguous. It expresses a present intent that on March 30, 1987, Plaintiff was "permanently disabled" and agreed not to seek work with Norfolk Southern or any affiliated companies. However, the Letter just as clearly expresses no limitation of Plaintiff's ability to seek employment with Norfolk Southern more than twenty years later after undergoing a back fusion operation which removed his disability and rendered him physically able to work again.[3] Because the language of the Letter is clear and unambiguous,

---

[3] An example of language that clearly states an individual will not seek employment regardless of changed circumstances, is present in the current version of the Letter that Norfolk Southern uses, which states: "I will not exercise my seniority rights nor attempt to return to work at any time in any capacity, at any place . . ." (Ex. D., Dkt. [37-3]). Similar language is absent from the Letter signed by Plaintiff.

12

the Court need not look beyond its terms to determine its meaning.  Nash v. Roberts Ridge Funding, LLC, 305 Ga. App. 113, 699 S.E.2d 100, 103 n.3 (2010) ("Where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties." (citation omitted)).  When the Letter was signed it precluded Plaintiff from working for Norfolk Southern as a result of his permanent disability as it then existed, but that agreement has no current bearing on his ability to work for the railroad given his present circumstances.  Therefore, under Georgia contract law, the Letter does not preclude Plaintiff from seeking employment with Norfolk Southern.  This Court is preempted from deciding any issue beyond the construction of the Letter under Georgia contract law.  The effect of the Letter beyond the findings stated herein must be determined pursuant to the RLA and the CBA.

## Conclusion

For the aforementioned reasons, Plaintiff's Motion for Summary Judgment as to Defendants' Counterclaim [37] is **GRANTED in part and DENIED in part**, Defendants' Motion for Summary Judgment [38] is **DENIED in part**, and Defendants' Motion for Leave to File Motion for Summary Judgment on the Counterclaim [44] is **DENIED**.  Judgment shall be

13

entered declaring that Plaintiff is not barred under Georgia contract law from seeking employment with Norfolk Southern.  Because no other issues remain for determination by this Court, the Clerk shall **CLOSE** the case.

**SO ORDERED**, this   1st   day of November, 2010.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

14